477 A.2d 885

**Dominick PANGALLO**

v.

**Mary M. PANGALLO, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1984.

Filed May 18, 1984.

Petition for Allowance of Appeal Denied Sept. 18, 1984.

Richard E. Myers, Greensburg, and Lois J. McKee, McKessport, for appellant.

Richard E. Myers, Greensburg, for appellee.

Before BROSKY, OLSZEWSKI and JOHNSON, JJ.

BROSKY, Judge:

In this appeal from a divorce decree appellant argues that the court erred in granting the divorce pursuant to Section 201(d)(1) of the Divorce Code [1] because, she contends, the parties had not lived separate and apart for three years. Mrs. Pangallo also contests the distribution of marital property ordered by the lower court. We affirm.

The parties were married in June, 1942. Since 1943 they have resided on farm property owned by them in Westmoreland County.

In 1979 Mr. Pangallo filed a divorce complaint under the former Pennsylvania Divorce Law.[2] After the enactment of the Divorce Code, however, he amended the complaint to seek a divorce pursuant to Section 201(d) of the Code which provides:

> (d)(1) It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:
>
>> (i) the respondent does not deny the allegations set forth in the affidavit; or

1. 23 P.S. § 201(d)(1).

2. Act of May 2, 1929, P.L. 1237, § 1; 23 P.S. § 1 *et seq.* repealed by Act of April 2, 1980, P.L. 63, No. 26 § 101, *et seq.*

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken. 23 P.S. § 201(d).

Appellant did not contest that the parties' marriage is irretrievably broken, but she disputed the allegation that they have been separated since 1977 and sought alimony, alimony pendente lite, counsel fees and equitable division of the marital property.

A hearing was held before a master at which evidence was presented both as to grounds for divorce and as to the parties' financial situation. The master found the following facts relevant to the grounds for divorce.

Mr. and Mrs. Pangallo resided on property owned by them on which is situated a house, barn, garage, trailer and several outbuildings. At the time of the hearing the property comprised approximately 112 acres, one acre having been given to each of the couple's three children.

Since 1975 the parties have not engaged in sexual relations. The record indicates that at that time they began to use separate bedrooms.

In the fall of 1977 Mrs. Pangallo left the farm house and went to live for a period of time at the couple's daughter's house, which is located on the acre which had been part of the farm property. Mr. Pangallo continued to reside in the house to which Mrs. Pangallo would return from time to time.

It was Mr. Pangallo's testimony that when his wife would spend a night in the home, he would sleep at his son's residence, also on property which was part of the farm.

Apparently, this pattern continued from the fall of 1977 to January 1981 at which time Mrs. Pangallo returned to the residence. Mr. Pangallo testified that he spent the nights in that period at his son's home, that he and his wife were in their home at the same time for only brief periods

during the day, and that after 1977 they did not socialize together, eat together or speak, except to argue.

Mrs. Pangallo's testimony did not dispute that of her husband as to their sleeping arrangements or lack of communication, although she did say that she did not consider that she was separated from him until October, 1981 when she again went to live with their daughter. Mrs. Pangallo stated that she took care of the couple's finances until 1978 when Mr. Pangallo sold the cows that they had used for milking.

The master concluded that the Pangallos' marriage was over in 1977 and that they had separated then. He therefore found that they should be divorced pursuant to Section 201(d) of the Code.

It is Mrs. Pangallo's contention that the evidence does not support a finding that the couple was separated before 1981 because until that date they resided in the same house. We agree with the master's conclusion that the facts of this case do indicate that a separation took place in 1977 even though the parties both spent some time at the residence.

The Divorce Code defines the term "separate and apart" at Section 104, as the "complete cessation of any and all cohabitation." The definition was proposed by Rep. McVerry who said when he introduced the amendment defining the term:

MR. McVERRY: Mr. Speaker, the provision that was adopted prior to the lunch break which provided a ground for unilateral divorce on the basis of living separate and apart for a period of 2 years requires, in my estimation, that the bill be amended to include a definition of "separate and apart," so that there is no problem that might arise with regard to two people occupying the same premises but not occupying it as husband and wife.

Accordingly, people may think that they live separate and apart when they no longer engage in marital relations but occupy the same domicile. I submit that separate and apart as a grounds for divorce should mean complete cessation of any and all cohabitation. Accord-

ingly, I would request the House to approve the inclusion of a definition in the definitional section of the bill to read "separate and apart shall mean complete cessation of any and all cohabitation."

\* \* \* \* \* \*

MR. McVERRY: ... All this amendment does is include, in the definitional section of the bill, a definition of "separate and apart", and it defines "separate and apart" and "Complete cessation of any and all cohabitation" such that we cannot have a circumstance where two people occupy the same dwelling but consider themselves to be living separate and apart because they are not engaging in family affairs or marital relations, shall we say. Remarks of Rep. McVerry, *Legislative Journal—House,* Session of 1979, at 1961–62 (October 10, 1979).

Discussion of the amendment was brief and it was passed by an overwhelming majority.

We conclude that where, as in the instant case, the parties sleep in separate dwellings and are present in their home at the same time only sporadically, that they do in fact live separate and apart. The evidence supports a finding that Mr. and Mrs. Pangallo led separate lives, though they resided on a farm owned by both of them. They did not reside in the same dwelling at the same time, even though they both had access to the house.

Therefore even if we assume *arguendo* that Section 201(d) is not meant to govern cases in which a couple occupies the same dwelling, we nonetheless find it applicable to the instant case.

We believe our conclusion is consistent with the policies stated in the Divorce Code, among which is to make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.[4] 23 P.S. § 102(a)(1). The parties to this appeal have resided for forty years on a

---

4. Our trial courts have concluded in several cases that husband and wife who continue to reside in the same house may nonetheless be considered to have lived "separate and apart." See e.g. *Amelio v. Amelio,* 18 D & C 3d 673 (1981) (the Code use of the term "separate and apart" refers to "separate lives, not separate roofs".); *Meyerl v.*

farm owned by them on which property also dwell in separate residences their three children. That their separation involved trips to and from their house and those of their children seems to us consistent with the physical, social and perhaps economic realities of their lives. Despite the fact that both parties used the house on occasion, we find that they did so separately.

We turn now to appellant's contention that the trial court erred in its division of marital property. Specifically she argues that the trial court ignored her ill health, and contribution as a homemaker and co-worker on the farm.

Mrs. Pangallo contests the denial of her claims for alimony, alimony pendente lite and counsel fees, as well as the division of the marital property.

■ Our review of these claims is limited to determining whether the lower court abused its discretion. See *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983) (review of alimony, alimony pendente lite and counsel fees awards limited to abuse of discretion.); *Gee v. Gee*, 314 Pa.Super. 31, 460 A.2d 358 (1983) (abuse of discretion standard applied to equitable distribution awards.)

*Meyerl*, 129 Pitt L.J. 397 (1981) (husband who lived in separate residence for two years returned to marital domicile to live in basement for two months; this did not constitute cohabitation within meaning of the Code.)

Despite the obvious problems of proof associated with finding a couple residing in the same house to actually be living "separate and apart", the courts of other jurisdictions have found that sharing a joint residence does not necessarily mean a couple is cohabitating. See *Heckman v. Heckman*, Del., 245 A.2d 550 (1968).

But see *Lillis v. Lillis*, 235 Md. 490, 201 A.2d 794 (1964) (since parties lived intermittently in the same house, they did not live "separate and apart", cessation of sexual relations alone not enough).

See Rounick, *Pennsylvania Matrimonial Practice*, Part 1, § 4-4 for a discussion of case law and adoption of the *Amelio* view.

We conclude that the present case unlike, for example *Amelio*, does not involve parties who actually resided in the same dwelling. Nor is the sole evidence of separation a cessation of sexual relations. Instead, the parties clearly did not reside in the same house at the same time and in fact lived in such a manner as to indicate to the neighborhood that they no longer resided together.

Therefore, we leave to another day the question of whether the *Amelio* approach is correct.

The Divorce Code at Section 102(a)(6) (23 P.S. § 102(a)(6)) affirms that it is the policy of this Commonwealth to:

Effectuate economic justice between parties who are divorced or separated and apart or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

To this end, Section 401(d) provides:

(d) In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

■ We have carefully reviewed the record in this case, the master's report and trial court opinion and concluded that the trial court did not abuse its discretion in its

distribution of the Pangallos' property. The master and the court displayed genuine concern for the well being of the parties and fashioned what they believed the most equitable solution to a difficult problem. Contrary to appellant's assertion we find that the trial court did consider her age, health and contribution both as a homemaker and working farm partner.

■ Nor do we believe the Court erred in denying alimony pendente lite and counsel fees. The record indicates that Mrs. Pangallo had secured adequate funds from the couples' savings to cover her needs during the pending litigation. We note in this regard that the husband was ordered to pay masters' fees and court reporter's fees.

Finally, we find no abuse of discretion in the trial court's decision not to award alimony to Mrs. Pangallo.

Section 501 of the Act (23 P.S. § 501) directs the courts to consider the following factors in determining whether to award alimony:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

34

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

23 P.S. § 501(b).

It was disclosed at the hearing that although Mr. Pangallo had worked as a school bus driver for some years, he had been injured and was uncertain of returning to his employment. At the time of the hearing Mr. Pangallo was 68 years old and his wife was 60. Mr. Pangallo received social security and when she becomes 62, Mrs. Pangallo will receive a portion of her husband's social security payment.

■ The trial court divided the marital property in such a way as to enable the parties to maintain the standard of living they had enjoyed during their marriage. We find no abuse of discretion in the denial of alimony.

Order affirmed.