491 A.2d 156

**Joseph A. FLYNN**

v.

**Mary FLYNN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1984.

Filed March 29, 1985.

78

Armand E. Olivetti, Scranton, for appellant.

Amil M. Minora, Assistant District Attorney, Scranton, for appellee.

Before CIRILLO, BECK and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Lackawanna County entered November 23, 1982, granting a decree in divorce and an award of temporary alimony. The appellant, Mary Flynn, requests that the

divorce decree be reversed and that her award of alimony be vacated and remanded for additional consideration.

On January 22, 1981, the appellee, Joseph Flynn, filed a complaint for divorce based upon indignities and irreconcilable differences, which was subsequently amended in May. A supplemental complaint was filed under section 201(d) of the Divorce Code,[1] alleging that the marriage was irretrievably broken and that the parties have lived separate and apart for a period in excess of three years. The appellant filed an answer and counterclaim, denying the aforementioned allegations and requesting that the court issue an order awarding alimony, child support, and the equitable distribution of all marital property.

The matter was assigned to a master who, after having conducted a hearing, concluded that a divorce should be granted and that temporary alimony in the amount of $150 per month for twelve months be awarded to the appellant. On November 23, 1982, the Honorable James M. Munley issued an order adopting the master's recommendation of the divorce decree, but modifying the award of temporary alimony. Alimony payments were extended for a period of twenty-four months at $75 per month, in lieu of assigning a value to the appellee's pension fund as part of the marital property. This appeal followed.

On appeal, the appellant contends that the circumstances attendant to her living arrangement in the same household with her husband do not meet the requirements of "separate and apart" of Section 201(d), thereby invalidating the ground upon which the divorce decree was granted. She also contests the method by which the value of her husband's pension interest was allocated and the amount of the award of alimony as materially insufficient and unsupported by evidence.

In the review of a divorce case, it is the responsibility of the Superior Court to make a de novo evaluation of the record and to determine independently of the master and of

1. Act of April 2, 1980, P.L. 63, No. 26, 23 P.S.

the hearing court whether a legal cause of action exists. *Vajda v. Vajda,* 337 Pa.Super. 573, 487 A.2d 409 (1985); *Jones v. Jones,* 311 Pa.Super. 407, 457 A.2d 951 (1983). Since the divorce in the matter before us was based upon Section 201(d) of the Divorce Code, we must apply that provision to the facts at hand.

Section 201(d) of the Divorce Code provides in pertinent part:

(d)(1) It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken.

The operative language "separate and apart" is defined as the "complete cessation of any and all cohabitation". 23 P.S. § 104. The term "cohabitation", however, is not defined in the Code.

In *Thomas v. Thomas,* 335 Pa.Super. 41, 483 A.2d 945 (1984), we recently addressed the issue of the definition of cohabitation:

"[C]ohabitation" means the mutual assumption of those rights and duties attendant to the relationship of husband and wife. The ties that bind two individuals in a marital relationship involve more than sexual intercourse. Thus, we find that instances of sexual relations during a separation period do not, without more, defeat a claim that the parties have lived separate and apart for purposes of Section 201(d).

*Id.,* 335 Pa.Superior Ct. at 47, 483 A.2d at 948. This definition "reflects the public policy of this Commonwealth as declared in the legislative findings and intent outlines in Section 102 of the Divorce Code. Section 102 states that the legislature intended to '[e]ncourage and effect reconcili-

ation and settlement of differences between spouses ...'." *Id.*

Thus, the gravamen of the phrase "separate and apart" becomes the existence of separate lives not separate roofs. *See, e.g., Meyerl v. Meyerl,* 21 Pa.D. & C.3d 729 (Allegheny Co., 1981); *Amelio v. Amelio,* 18 Pa.D & C.3d 673 (Lehigh Co., 1981). This position follows the trend of Pennsylvania case law in which a common residence is not a bar to showing that the parties live separate and apart in order to establish entitlement to support. *Wechsler v. Wechsler,* 242 Pa.Super. 356, 363 A.2d 1307 (1976); *Commonwealth ex rel. DiPadova v. DiPadova,* 223 Pa.Super. 403, 302 A.2d 510 (1973). It additionally considers the economic hardship imposed in requiring parties to occupy separate households in order to dissolve their marriage under Section 201(d) and the realities of a marital relationship as extending beyond joint residency. 23 P.S. § 102(a)(1). *Cf. Pangallo v. Pangallo,* 329 Pa.Super. 25, 477 A.2d 885 (1984).

In the instant matter, it is evident that the parties, though living under the same roof but in separate parts of the house, have ceased all marital relations for a period in excess of three years. Therefore, we find that the parties have met the requirements of "separate and apart" under the Divorce Code. The decree of divorce is affirmed.

Appellant next contends that the interest of her husband's pension is improperly allocated and further that the award of alimony is materially insufficient and unsupported by evidence. In determining the propriety of property distribution and of alimony, this Court in *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983), applied the abuse of discretion standard:

Under the abuse of discretion standard, we are not to usurp the trial court's duty as finder of fact. Moreover, we do not choose to follow presumptions in the hope of achieving the legislature's goal of "economic justice". At oral argument in this case, a suggestion was made by counsel for the parties that this Court adopt "guidelines" or establish "presumptions" to be applied in deciding

issues involving property rights under the Code. In view of the legislative guidelines which are set out forthwith, we see no need for this Court to enumerate additional criteria. Rather, we will carefully scrutinize each of the guidelines in determining whether or not the lower court has abused its discretion. This will assure that our review of proceedings under the New Divorce Code be appropriately assiduous.

*Id.*, 316 Pa.Superior Ct. at 287, 462 A.2d at 1353. In applying this standard, we find the allocation of the non-vested pension interest within the award of alimony to be an improper method of distribution.

 It is the function of the court to determine whether a property right has been acquired during marriage and whether equity warrants its inclusion in the marital estate. If the property right is deemed includable, the court must allocate the interest fairly, consistent with the legislative intent to effectuate economic justice between the parties. 23 P.S. § 102(a)(6). It is acknowledged in jurisdictions requiring the distribution of marital property that a spouse has a right, co-extensive with that of a wage-earner spouse, to a portion of retirement benefits accrued during marriage. *See Malone v. Malone,* 587 P.2d 1167 (Alaska 1978); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del.1981); *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978); *see generally* Annot., Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3d 176 (1979). Some courts, however, have distinguished the various types of benefits, determining some to constitute marital property subject to distribution while declining to so classify others. *See McCandless v. McCandless,* 23 Pa.D & C.3d 739 (Butler Co., 1982) in which the court did not order the equitable distribution of a spouse's pension rights that had not vested at the time of the divorce. *See Miller v. Miller,* 83 Mich. App. 672, 269 N.W.2d 264 (1978), in which the court characterized vested unmatured pension benefits as marital property, but declined to classify a non-vested retirement annuity. *See also Braderman v. Braderman,* 339 Pa.Super.

185, 488 A.2d 613 (1985) (collecting cases). Section 401(e) defines marital property as "all property acquired by either party during the marriage." Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property. This determination is made without regard to the possibly contingent nature of the pension, whether or not it has vested or matured. In our classification of pension interests as marital property, we are persuaded by the analysis of the Superior Court in our sister state in *Weir v. Weir*, 173 N.J.Super. 130, 133, 413 A.2d 638, 640 (1980):

> [T]he fact is that the concept of vesting, though embodied in the [retirement] plan document itself, really has little meaning from the standpoint of the ultimate decision which must be made under [the marital property act]. Our equitable distribution statute requires that property ... acquired during marriage ... be subject to equitable distribution upon divorce. There is no requirement of vesting.

The California Supreme Court in *In Re Marriage of Brown*, 15 Cal.3d 838, 544 P.2d 561, 126 Cal Rptr. 633 (1976), similarly concluded that non-vested pension interests are a variety of marital property rather than a mere expectancy of gain. Any contingencies, explained *Brown*, should be taken into account by the hearing court, not when determining whether the plan is includable in the marital estate, but, rather, when allocating the property rights between the parties. Consequently, we conclude that a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of marital property subject to consideration by the court.

Accordingly, we support the finding of the hearing court in designating the pension of the appellee as marital property. However, we find its allocation within the alimony award to be improper and remand the order for reconsideration.

■ We recognize that the hearing court is presented with a complex task, exacerbated by the fact that the

pension right may be terminated upon discharge, death, or other contingencies. *See Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del.1981). However, given the very nature of a non-vested pension benefit, i.e., that it is speculative, deferred distribution is the preferred method of effectuating economic justice between the parties and insuring a just settlement of property rights.

In reaching this conclusion, we are mindful of the concerns expressed by Judge Beck in her Concurring and Dissenting Opinion. But at the same time, we have given thoughtful attention to the injustices that may occur were we to adopt the approach she suggests.

We cannot overlook the speculative nature of non-vested pension benefits. In cases involving this type of pension, it is questionable to assume that benefits will *ever* be received. The Illinois Supreme Court aptly summarized the problem in *In re Marriage of Fairchild,* 110 Ill.App.3d 470, 475, 66 Ill.Dec. 131, 134, 442 N.E.2d 557, 560 (1982):

> The dilemma ... is that while it is unfair to ignore the value of non-vested benefits in the division of marital property, those benefits in some instances being the only significant asset, it is also unfair to effect a present division of the marital property utilizing an actuarial value of those benefits computed in reliance on speculative, albeit actuarily accepted assumptions.

Judge Beck is of the opinion that

> the present value of the pension benefit reflects actuarial discounts for contingencies that might prevent realization of the benefit so that the nonemployee-spouse does, to some extent, share the risk of non-payment by receiving an immediate offset of property that may prove less than the worth of the pension benefits ultimately received by the employee-spouse.

At 164.

Actuarial discounts reflect nothing more than *estimates* of life expectancies and the possibilities of a contingency

occurring. These estimates may work well for the insurance industry. However, in situations such as the case *sub judice*, they do not reflect the *realities* of what may occur. For example, assume that a court orders immediate offset distribution of a non-vested pension benefit, and that the employee-spouse is awarded the speculative pension benefit while the nonemployee-spouse is awarded the remainder of the marital property. If the employee-spouse were to die the day after distribution, the beneficiaries of the spouse's estate would effectively be left with nothing.

Admittedly, this scenario illustrates a drastic situation, but it is no less a possibility than those suggested by Judge Beck. Under virtually any conceivable factual scenario in which immediate offset distribution is employed, the employee-spouse is required to bear all the risk of nonpayment. To say that the nonemployee-spouse shares this risk by "receiving an immediate offset of property that may prove less than the worth of the pension benefits ultimately received ..." still does not equalize the risk of nonpayment.

Therefore, by deferring the allocation of benefits until the time of receipt, both parties share the risk that the benefits may not be paid without being denied the opportunity to receive this share of the marital estate. Further, deferred distribution allows the court to divide and distribute those pension benefits actually paid. Moreover, any attempt to defeat the nonemployee-spouse's right to a portion of the pension entitlements may be adequately dealt with by the trial court pursuant to its grant of "full equity power and jurisdiction." 23 P.S. § 401(c). *Cf. Vajda v. Vajda, supra.* We find this method best effectuates economic justice and insures a just settlement of property rights.

■ The only remaining question is how to implement the deferred distribution. In cases involving a non-vested pension plan where, as we have discussed above, it would be inequitable to assume that benefits will ever be received, the court may resolve this uncertainty by giving the non-pension holding spouse a share of the interest if and when it matures. The court may elect to retain jurisdiction and to

divide the benefits upon receipt. *See, e.g., In re Marriage of Hobbs*, 110 Ill.App.3d 451, 66 Ill.Dec. 203, 442 N.E.2d 629 (1982). Alternatively, the court may elect to assign a percentage to each party of any future payments. *See, e.g., Robert C.S. v. Barbara J.S., supra; Blitt v. Blitt*, 139 N.J.Super. 213, 353 A.2d 144 (1976). The decision to retain jurisdiction or to assign a percentage distribution is one that we leave to the sound discretion of the trial court.

■ In the case at bar, we find that appellee's non-vested pension interest requires the hearing court to apply the method of deferred distribution until the time of receipt.[2] Accordingly, we vacate the order of alimony and remand for entry of a new decree, in which the pension interest is extracted from the alimony award and considered in equitable distribution consistent with the method set forth in this opinion. Since we are unable to distinguish the award of temporary alimony from that of the adjustment for pension interest, we need not address the appellant's contention that the award is materially insufficient and unsupported by the evidence.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

BECK, J., files a concurring and dissenting opinion.

BECK, Judge, concurring and dissenting:

I agree with the majority's resolution of the cohabitation issue, *see Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984), and with the majority's determination that a

---

2. We note that the record indicates that appellee's pension was to vest in 1984. We have no way of knowing whether it did in fact vest. Consequently, on remand, the court must first address this question.

The long delay involved between the filing of this appeal and our decision today brings to mind the sentiments expressed by Judge Beck in her dissenting opinion in *Sutliff v. Sutliff*, 326 Pa.Super. 496, 474 A.2d 599, 603 (1984) (en banc): "Justice is best served and harm to both parties is minimized by proceeding directly and expeditiously to a final disposition of the entire case ..."

portion of the employee-spouse's pension benefits constitutes marital property subject to equitable distribution.

However, I disagree with the majority's conclusion that upon remand to the lower court, the marital property portion of the pension benefits should be given deferred distribution because the pension benefits are too speculative for present valuation and immediate offset distribution. Instead, I should hold that upon remand, the lower court must obtain actuarial testimony as to the present value of the pension benefits and determine whether an award to the employee-spouse of the entire marital property portion of the pension benefits can be immediately offset by an award to the nonemployee-spouse of other marital assets of comparable worth. If on remand the lower court finds that the pension benefits are not amenable to immediate offset distribution, the lower court should then decide how to effect deferred distribution of the marital property portion of the pension benefits.

At the core of our decision stands the legislative recognition of Section 401 of the Divorce Code ("Code"), Act of April 2, 1980, P.L. 63, 23 P.S. § 401, that marriage is, *inter alia,* an economic partnership whose assets, upon dissolution of the marriage, may be equitably divided and distributed between the parties after the court's due consideration of "all relevant factors ... [such as the] contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker." Section 401(d)(7) of the Code; *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *see also* Section 102(a)(6) of the Code, 23 P.S. § 102(a)(6).[1]

---

**1.** We quote with approval the excellent opinion of Honorable R. Stanton Wettick, Jr., in *Salac v. Salac* (No. 2310–78, Allegheny County Court of Common Pleas, filed March 21, 1984), slip op. at 10:

Equitable distribution of virtually all property acquired during the marriage rests upon the concept of marriage as a shared enterprise or joint undertaking in which both parties contribute to the acquisition and preservation of marital assets.... A property division based on the concept of marriage as a shared enterprise means that full recognition is to be given to non-economic contributions and

Barring the exceptions listed in Section 401(e) of the Code, "[a]ll property, whether real or personal, acquired by either party during the marriage ... regardless of whether title is held individually or by the parties in some form of co-ownership" is marital property subject to equitable distribution. Section 401(f) of the Code. The only reference in Section 401(e) to pension benefits appears at Subsection (6) which excludes certain veterans' benefits from marital property "except ... where [the] veteran has waived a portion of his military retirement pay in order to receive Veteran's Compensation." Hence, apart from Section 401(e)(6) of the Code, pension benefits, even if presently uncollectible, constitute marital property to the extent that they are attributable to employment performed during the marriage and are thus "acquired during the marriage." *See King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984); *accord, Kikkert v. Kikkert,* 177 N.J.Super. 471, 427 A.2d 76 (App.Div.1981).

While the present uncollectibility of a pension benefit does not prevent the benefit's inclusion as marital property,[2] the contingencies affecting the employee-spouse's realization of the benefit must be assessed in the court's valuation of the benefit and subsequent equitable distribution of the parties' marital property. Accurate appraisal of the pension benefit is especially important because in most marriages, the pension benefit and the marital residence comprise the two major marital assets.[3]

> that distribution is not intended to be based primarily on the dollar value of the services each party contributed to the marriage. (Citation omitted.)

**2.** Pension benefits are not collectible until they are vested and have matured. Pension benefits are nonvested "so long as the right to receive these benefits will be forfeited by discharge, voluntary termination, or death.... A vested interest matures when the employee can meet all requirements for immediate payment of retirement benefits." *Salac,* slip op. at 3; *Kalinoski v. Kalinoski,* 9 Fam.L.R. 3033 (1983).

**3.** In discussing the public policy issues relating to pensions and in describing the mathematical formulas to be used in dividing the pension, we have relied on *Salac; King; Kalinoski;* Skoloff, *How to Evaluate and Distribute Employee Benefits in a Divorce,* Nat'l.L.J., February 13, 1984, at 25; Troyan, *What's Wrong with the 'Accrued*

## I. Immediate Offset Distribution

Where it is probable that the employee-spouse will overcome obstacles to realization of the benefit,[4] the benefit is assigned a present value

> estimated to be the amount of monies the employee would take in return for giving up his right to an unknown number of future payments. This amount is discounted by actuarial calculations reflecting contingencies that could affect future pay outs, with such discounts being given for mortality, inflation, interest, probability of continued employment and probability of vesting.

Skoloff, *How to Evaluate and Distribute Employee Benefits in a Divorce*, Nat'l L.J., February 13, 1984, at 25.

Since marital property consists only of property acquired by either party *during* the marriage, a coverture fraction must be applied to the present value of the pension benefit in order to determine the percentage of the pension benefit attributable to the marriage. *King.* The numerator of the coverture fraction is the period of the employee-spouse's pension plan participation during the parties' marriage, from the date of marriage to the date of separation (23 P.S. § 401(e)(4)) and the denominator of the fraction is the total period of the employee-spouse's pension plan participation. Multiplying the present value of the pension benefit by the coverture fraction yields the portion of the pension benefit which is marital property.

The court must then decide whether the marital property portion of the benefit is amenable to immediate equitable distribution between the parties. If at the time of the entry of a distribution order, an award of the pension benefit to the employee-spouse could be immediately offset by an award to the nonemployee-spouse of other marital property of comparable value (usually the marital residence), the

*Benefit' Method of Valuing Pensions upon Divorce*, 4 Fairshare 10 (1984); Troyan, *Pension Evaluation and Equitable Distribution*, 10 Fam.L.R. 3001 (1983).

4. An actuary is needed to determine the statistical probabilities of vesting and maturation of the pension benefits. *King; Kalinoski.*

pension benefit is subject to present division and distribution.

An award of all the pension benefits to the employee-spouse and an award of other marital property to the nonemployee-spouse protects both spouses from problems that can occur. Such problems include the establishment and maintenance of contact between the nonemployee-spouse and the pension plan administrator and the fact that the employee-spouse could choose certain benefit options that would defeat the nonemployee-spouse's entitlement. *See* discussion of deferred distribution disadvantages, *infra.*

The advantages of immediate offset distribution are that the parties receive a final resolution of their litigation.[5] Moreover, the nonemployee-spouse is protected against any attempts by the employee-spouse to change pension plan beneficiaries. Finally, the court is not required to retain jurisdiction in order to allocate the pension benefits when they are received or to enforce an award of a percentage of the benefits as they are received.

The chief disadvantages of immediate offset distribution are that a pension benefit may be offset by a liquid asset and thus afford the nonemployee-spouse greater immediate economic opportunities than those of the employee-spouse and that the risk of nonpayment of the pension benefit is born principally by the employee-spouse. With respect to the risk of nonpayment, it must be remembered, however, that the present value of the pension benefit reflects actuarial discounts for contingencies that might prevent realization of the benefit so that the nonemployee-spouse does, to some extent, share the risk of nonpayment by receiving an immediate offset of property that may prove less than the worth of the pension benefits ultimately received by the employee-spouse. Additionally, "the pension may be taxed

5. "Long-term and deferred sharing of financial interests are obviously too susceptible to continued strife and hostility, circumstances which our courts traditionally strive to avoid to the greatest extent possible." *Kikkert,* 177 N.J.Super. at 478, 427 A.2d at 79.

as an annuity, ... in part at ordinary income rates ... while the nonemployee spouse's 'equivalent' asset, *e.g.,* a home, may be taxed at capital gain rates ... or not at all...." *Kalinoski, supra,* at 3036.

## II. Deferred Distribution

Where there exists a substantial probability that the employee-spouse will not overcome the contingencies affecting realization of the pension benefit, the pension benefit is too speculative for present valuation and immediate offset distribution. Additionally, where the pension benefit can be presently valued but there are insufficient other marital assets of comparable worth to award to the nonemployee-spouse, the benefit cannot be equitably divided and distributed through an immediate offset. In either of these instances, the court must defer valuation and distribution of the pension benefit until the benefit becomes payable.

Deferred distribution cannot be based upon the present value of the pension benefit at the time of the marital dissolution. As we explained in *King,*

[i]f the non-employee spouse is to wait until the pension enters pay status to receive [a] share of the marital property, [the non-employee spouse] should not receive only that portion of the benefit that it seemed likely [the non-employee spouse] would receive at an earlier date [*i.e.,* the present value of the benefit at the time of marital dissolution]. Instead, [the non-employee spouse] should receive that portion of the actual payment attributable to the years of the marriage.

*Id.,* 332 Pa.Super. at 535, 481 A.2d at 917. Hence, "the total benefits entitlement of the employee spouse" must be ascertained by the court.

To determine the percentage of the pension benefits entitlement ascribable to the marriage, the court must apply a coverture fraction whose numerator is the period of the employee-spouse's pension plan participation during the parties' marriage from the date of marriage to the date of separation and whose denominator is the total period of the employee-spouse's participation in the pension plan. Multi-

plying the total pension benefits entitlement by the coverture fraction yields the portion of the pension benefits entitlement which is marital property.

Division and distribution of the marital property portion of the pension benefits entitlement may occur in two distinct ways. At the time of marital dissolution, the court may equitably divide the marital property portion of the benefits entitlement by determining the nonemployee-spouse's percentage share of the benefits marital property. Deferred distribution of the benefits is then accomplished by distributing to the nonemployee-spouse the predetermined percentage share of the pension benefits when the benefits are paid. Alternatively, the court may reserve both equitable division and distribution of the marital property portion of the pension benefits entitlement until the pension benefits are payable.

The advantages of deferred distribution are that both parties bear the risk of nonpayment of the pension benefits and that the court can base its division and distribution of the pension benefits upon the payments that are actually made rather than upon an actuarial calculation [present value] of the payments that may be made.

However, the disadvantages of deferred distribution are numerous. Deferred distribution forces parties who desire to dissolve their relationship by divorce to continue to deal with one another, and deferred distribution continues to burden the court. In our highly mobile society it may be difficult to resolve the distribution because the residence of the parties and the situs of the pension fund may no longer be in the forum where equitable division was had.

The following scenarios illustrate some additional avenues by which a nonemployee-spouse's right to a portion of the pension entitlements may be defeated. The nonemployee-spouse may predecease the employee-spouse whereupon the employee spouse might receive a windfall, since the employee spouse might resume full right to the benefit entitlements. An employee-spouse may choose a straight life annuity option which guarantees maximum benefits for

the life of the employee but ceases all payments upon the employee's death. The employee-spouse may remarry and elect a joint survivor annuity which, upon the death of the employee-spouse, will pay the annuity to the employee's new spouse as survivor. If the employee-spouse's pension plan has a death benefit, the employee-spouse can attempt to thwart the nonemployee-spouse's right to an equitable portion of the pension entitlements by naming a new beneficiary of the·death benefit. While the employee-spouse may secure restoration of the death benefit beneficiary status through a court action, the fact remains nevertheless that such litigation is not only costly in time and money for the nonemployee-spouse and the court but also delays the desired final resolution of the parties' rights.

Additionally, deferred distribution requires the court to continue supervision and enforcement of the marital property award and may result in the proliferation of administrative problems as, for example, proper notification to pension plan administrators of any restrictions on payment of plan benefits stemming from the marital property award.

### III. Conclusion

Comparing the advantages and disadvantages of immediate offset distribution with those of deferred distribution leads to the inescapable conclusion that whenever possible, a court should utilize immediate offset distribution of pension benefits and thereby finally determine the parties' marital property rights.

I now examine the facts of the instant case to ascertain whether the marital property portion of the employee-spouse's pension benefits is susceptible to distribution under the preferred method of immediate offset.

At the master's hearings of December 30, 1981, and March 31, 1982, the employee-spouse testified that he had been employed as a steam fitter for twenty-five years, Record at 22–23, and that accordingly, he was participating in the pension plan of the Plumber and Pipefitters National Union. Record at 46. The employee-spouse explained that his pension benefits would vest in 1984. Record at 93.

Furthermore, the employee-spouse stated that at the time of the hearings he was fifty years old (date of birth—November 21, 1931), Record at 32, and that his pension benefits would not mature (become payable) before he reached the age of 65 unless he became disabled and attained the age of 55. Record at 46.

Thus, as of the date of the hearings, the employee-spouse had worked for twenty-five years as a steam fitter and needed only two additional years of work in that capacity in order to have his pension benefits vest (become nonforfeitable). The employee-spouse did not offer any evidence tending to suggest the probability of his not being able to complete the two years of employment necessary for vesting (*e.g.*, work in a faltering industry) or of his not being able to survive until maturation (payment) of the benefits (*e.g.*, poor health). Given the scant evidence of record, I cannot rule, as does the majority, that the employee-spouse's pension benefits are too speculative for present valuation by an actuary.

Consequently, I should remand this case to have the parties present the lower court with actuarial calculations regarding the likelihood of the employee-spouse's receipt of the pension benefits and the concomitant present value, if any, ascribable to the pension benefits. Upon receipt of the additional evidence, the court could then ascertain whether the pension benefits are amenable to present valuation. If the benefits are capable of being presently valued, the court could then determine whether there are sufficient marital assets available for distribution to the nonemployee-spouse to offset an award of the pension benefits to the employee-spouse or whether deferred distribution is necessary due to a lack of assets whose worth is comparable to that of the pension benefits.[6]

6. The sole evidence now of record concerning the value of the pension benefits consists of confusing and incomplete testimony offered by the employee-spouse. Record at 46–49. Since the record does not contain accurate and complete information regarding the value of the pension benefits, I cannot hold that deferred distribution will ultimately prove necessary because the parties lack assets to offset the

pension benefits (the parties' chief marital asset is the marital residence appraised at $18,500 as of January 31, 1982, Record at 16, 18, 90).