545 A.2d 362

**R. George MACKEY, Appellee,**

v.

**Marion M. MACKEY, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 1988.

Filed July 25, 1988.

Charles S. Cusick, Jr., New Castle, for appellant.

James P. Coulter, Butler, for appellee.

Before TAMILIA, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal presenting, *inter alia,* the interesting issue of whether spouses can "live separate and apart" under the same roof. This appeal is from the order of court denying the appellant's post-trial motions/exceptions to the decree of divorce and the bifurcation order entered by the Butler County Court of Common Pleas on January 12, 1987.[1]

1. The Decree of Divorce and Order of Court granting bifurcation of the economic issues read as follows:
   DECREE OF DIVORCE
   AND NOW, this 12th day of January, 1987, It is Ordered and Decreed That R. George Mackey and Marion M. Mackey are divorced and separated from the bonds of matrimony for all time to come, as if they had never been married.
   ORDER OF COURT
   AND NOW, this 12th day of January, 1987, after careful consideration, It is Ordered that plaintiff's Motion for Bifurcation of Trial is granted. The divorce having been decreed, the Court retains jurisdiction over all remaining issues.

In her appeal from the lower court's granting of R. George Mackey's request for a unilateral divorce, Marion M. Mackey questions:

I. Whether the lower court's determination that the parties had lived separate and apart for a period of at least three years was supported by the evidence.

II. Whether the lower court's determination that the parties' marriage was irretrievably broken was supported by the evidence.

III. Whether the lower court found sufficient factual and legal basis to permit bifurcation of the economic issues and to grant a unilateral divorce.

Having reviewed the record and the parties' briefs, we affirm the lower court's order denying the appellant's motion/exceptions to the decree of divorce and bifurcation order.

The record reveals that Mr. and Mrs. Mackey were married in 1972 and resided on the Mackey farm since the date of their marriage. In the spring of 1983, Mr. Mackey informed Mrs. Mackey that he wanted a divorce, and, on July 20, 1983, Mr. Mackey filed a divorce complaint against his wife. Approximately three years later, on June 11, 1986, Mr. Mackey filed an amended divorce complaint and a Divorce Code § 201 affidavit alleging that the parties had lived "separate and apart" for over three years and their marriage was "irretrievably broken." Mrs. Mackey responded that the parties had actually resided together in the marital residence for the past three years where they continued to carry out important aspects of their marital relationship. Mrs. Mackey also denied that the parties' marriage was "irretrievably broken." In August of 1986, Mr. Mackey filed a motion requesting that the court grant his divorce and bifurcate the case.

On September 23, 1986, a hearing was held and the following facts which are basically undisputed by the parties were elicited: At the time of filing the divorce complaint, Mr. Mackey was informed by his attorney that he would have to live separate and apart from his wife for a

period of three years in order to effectuate the divorce. On his attorney's advice, Mr. Mackey sought to establish separate living arrangements. Mr. Mackey, who is a dairy farmer by trade, has lived on the Mackey farm since 1921. Each morning, Mr. Mackey milks the cows and performs other farm labor throughout the day. Thus, Mr. Mackey felt it was essential that he continue to reside on the farm.[2] Mr. Mackey asked his wife to leave the marital residence when he filed for divorce but Mrs. Mackey refused. Consequently, since July of 1983, Mr. Mackey slept in the farmhouse's first floor bedroom which has an adjoining bathroom, and Mrs. Mackey resided on the second floor of the farmhouse. Although the parties continued to reside under the same roof, neither spouse regularly ventured into the other's private living quarters.

Over the past three years, the parties shared the common areas of the farm house including the living room, kitchen and front porch. While the parties generally prepared their own meals and did their own grocery shopping, they occasionally ate meals together and shared food produced on the farm. In addition, Mrs. Mackey continued to clean the entire house including, on occasion, the downstairs bedroom, despite Mr. Mackey's requests to the contrary. While the parties generally have not socialized together in public since Mr. Mackey filed for divorce, they have attended family picnics together,[3] dined together in the presence of Mr. Mackey's family, played doubles tennis together,[4] and occasionally entertained guests at the farm together.

2.  Both parties admit they had sufficient funds to reside under separate roofs. However, Mr. Mackey contends he needed to remain close to his livestock and Mrs. Mackey, who did not want a divorce, refused to leave the marital abode. Mrs. Mackey alleges that Mr. Mackey, if he truly wanted a divorce, would have moved into a mobile home which is situated on their property. However, the mobile home was purchased for and used as the residence of Mr. Mackey's hired farmhand.

3.  When attending family picnics after July of 1983, Mr. and Mrs. Mackey always arrived at the events separately.

4.  There is a tennis court on the grounds of the Mackey farm where the couple occasionally played doubles matches with mutual friends. However, the parties, rather symbolically, have not played a singles match since Mr. Mackey filed for divorce.

Since July of 1983, the parties' joint bank accounts have been dissolved, and their finances have been kept separate. However, the parties filed joint income tax returns for 1983, 1984 and 1985, and the parties continued to share a number of joint expenses including the electric bill and phone bill. In addition, once a month, Mrs. Mackey would help Mr. Mackey record receipts on the farm accounts and tax ledger.

Since filing for divorce, Mr. Mackey has not shown any affection towards his wife.[5] In fact, the parties have stipulated that they have not had sexual relations in the past three years. Over the past several years, Mr. Mackey has been involved in two extramarital affairs. While Mrs. Mackey was aware of her husband's infidelity and did not approve, she admittedly "had learned to live with it." Mrs. Mackey alleged that the parties' marriage, while not perfect, was alive and that she was not estranged from her husband. However, Mr. Mackey testified that he no longer harbored romantic feelings for his wife.

We note that, for a couple involved in divorce proceedings, Mr. and Mrs. Mackey have a remarkably civil, if not amiable, relationship. The parties freely admit that they have not had any serious arguments during their marriage. Mr. Mackey testified that his wife is a "very considerate person" and that he "respect[s] her." Both parties have made a conscious effort to remain friends during the past three years, and Mrs. Mackey has made an admirable attempt to preserve the marriage. However, Mr. Mackey steadfastly contends that the marriage is irretrievably broken.

On January 12, 1987, the trial court entered the aforementioned order and decree which granted Mr. Mackey's request for a unilateral divorce and bifurcated the economic

5. The record reveals one notable exception. In September of 1986, the parties testified that Mr. Mackey suffered a brief period (fifteen minutes) of "amnesia" during which he forgot about filing for divorce and embraced his wife in an outpouring of emotion. Both parties concede that Mr. Mackey was not in his normal state of mind when the incident occurred. (Reproduced Record, p. 42A, 70A–72A).

issues. Mrs. Mackey filed post-trial motions/exceptions to the court's decree and order. However, on June 19, 1987, the lower court dismissed Mrs. Mackey's motions/exceptions, and this appeal followed.

■ In reviewing a divorce case, it is our responsibility to make a *de novo* evaluation of the record and to determine independently of the lower court whether a legal cause of action exists. *Flynn v. Flynn*, 341 Pa.Super. 76, 491 A.2d 156, 158 (1985); *Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409, (1985); *Jones v. Jones*, 311 Pa.Super. 407, 457 A.2d 951, (1983). Thus, under the present circumstances, we must apply Divorce Code § 201(d) to the facts before us. In pertinent part, § 201(d) of the Divorce Code reads as follows:

(d)(1) It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:

(i) the respondent does not deny the allegations set forth in the affidavit; or

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken.

■ First, the appellant contends that the lower court's determination "that the parties have lived separate and apart for a period of at least three years" was not supported by the evidence.

Under the Divorce code, "separate and apart" is defined as the "complete cessation of any and all cohabitation." 23 Pa.S.A. § 104. In *Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945, 948 (1984), we found that " 'cohabitation' means the mutual assumption of those rights and duties attendant to the relationship of husband and wife." *See also, Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550

(1986). In *Flynn*, 491 A.2d 156, we applied the *Thomas* definition of cohabitation and stated:

> Thus, the gravamen of the phrase "separate and apart" becomes the existence of separate lives not separate roofs. (citations omitted). This position follows the trend of Pennsylvania case law in which a common residence is not a bar to showing that the parties live separate and apart in order to establish entitlement to support. *Wechsler v. Wechsler*, 242 Pa.Super. 356, 363 A.2d 1307 (1976); *Commonwealth ex rel. DiPadova v. DiPadova*, 223 Pa. Super. 408, 302 A.2d 510 (1973).

> .    .    .    .    .

> In the instant matter, it is evident that the parties, though living under the same roof but in separate parts of the house, have ceased all marital relations for a period in excess of three years. Therefore, we find that the parties have met the requirements of "separate and apart" under the Divorce Code.

*Flynn*, 491 A.2d at 159; *See also, Biler v. Biler*, 353 Pa.Super. 49, 508 A.2d 1261 (1986) (although husband and wife lived in the same home, they were separated so as to satisfy requirement for award of support).

Instantly, we find that the parties have lived "separate and apart" in accordance with the rule pronounced in *Flynn*, 491 A.2d 156, despite that fact that the parties reside in the same home. While the parties share the common areas of the house, both have private living quarters. The parties no longer have a public social life together. Significantly, the parties stipulate that they have not engaged in sexual relations with each other since June of 1983. Thus, we find that facts before us clearly manifest that the appellant lived a life separate from that of his wife, and, consequently, the parties have lived "separate and apart" within the meaning of Divorce Code § 201 for over three years.

For certain, the parties have shared some common household expenses, occupied common living spaces, visited family members together and occasionally entertained mutual

friends at their residence. However, Mr. Mackey should not be denied a unilateral divorce merely because he and his wife have demonstrated a level of civility rarely seen in a divorce action.[6]

As a farmer, Mr. Mackey must reside on his farm to tend his crops and care for his livestock in a proper manner. Instantly, we should consider the special requirements of Mr. Mackey's farming operation, just as, in *Flynn*, 491 A.2d at 159, we considered "the economic hardship imposed in requiring parties to occupy separate house holds in order to dissolve their marriage under Section 201(d)...." Similarly, Mr. Mackey should not be forced to move from his farm, inhibiting his ability to farm effectively, to a separate residence to demonstrate his intention to live "separate and apart" from his wife. Moreover, Mr. Mackey need not vacate the family farm, his home since 1921, to live a separate life from his wife.

■ Second, the appellant contends that the lower court's determination that the parties' marriage was "irretrievably broken," pursuant to Divorce Code § 201, was not supported by the evidence. Under the Divorce Code, the language "irretrievably broken" means "estrangement due to marital difficulties with no reasonable prospect of reconciliation." 23 Pa.S.A § 104.

Under the circumstances, Mrs. Mackey's continued desire to reconcile and settle the parties' differences is highly commendable, and we regret that this marriage must be dissolved. However, a healthy marriage can only exist when nurtured by the love of both husband and wife. Mr. Mackey's testimony unequivocally indicates that he no longer desires to be married to his wife. Moreover, since July of 1983, Mr. Mackey has demonstrated his desire for a

---

6. Our decision also reflects the public policy of the Commonwealth as declared in Divorce Code Section 102 which states that the legislature intended to "[e]ncourage and effect reconciliation and settlement of differences between spouses." By allowing the parties now before us to reside "separate and apart" under the same roof, we have afforded them the greatest opportunity for reconciliation, while preserving the intent and effect of Divorce Code § 201(d)(1).

divorce through both the parties' living arrangements which he initiated and his romantic relationships with women other than his wife. While still legally married, it is clear that the couple can no longer be described as husband and wife but rather simply as "housemates." Consequently, we find that the evidence on record conclusively demonstrates that there is no reasonable prospect of reconciliation between the parties.

Having determined that the parties have lived "separate and apart" for over three years and that the marriage is "irretrievably broken," we find that the lower court correctly granted Mr. Mackey's request for an unilateral divorce. Therefor, we must now dispose of the appellant's contention that the lower court erroneously ordered bifurcation of the economic issues.

■ In reviewing a lower court's decision to bifurcate, we will not overturn the lower court's decision absent an abuse of discretion. Pennsylvania law is clear that the lower court should grant a party's petition for bifurcation of economic claims and divorce claims only after carefully reviewing the facts of the case and determining that bifurcating will be of greater benefit than not bifurcating. Accordingly, "[a]s long as the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation, we defer to his discretion." *Wolk v. Wolk*, 318 Pa.Super. 311, 464 A.2d 1359, 1362 (1983); *Mandia v. Mandia*, 341 Pa.Super. 116, 491 A.2d 177, 179 (1985); *Fenstermaker v. Fenstermaker*, 348 Pa.Super. 237, 502 A.2d 185, 192 (1985).

■ Instantly, the lower court was concerned about the division of the marital property.[7] Also, the lower court stated that "determination of the [appellant's] claim for counsel fees, costs, expenses, and her request to live in the

7. Neither party expressly requested an equitable distribution of the marital property. However, the court's equitable power to effectuate economic justice, pursuant to Divorce Code § 401(c), allowed it to consider division of the marital property as a factor weighing in favor of bifurcation. *See Fenstermaker*, 502 A.2d at 192.

marital abode for a reasonable period of time, still remain. The determination of these issues may be long, involved and stressful...." (Memorandum of June 19, 1987, p. 3). Having reviewed the record, we find that no abuse of discretion occurred when the lower court, finding that the advantages of bifurcation outweighed the disadvantages, granted Mr. Mackey's motion for bifurcation.

In conclusion, we find that the parties have lived separate and apart for the requisite three-year period within the meaning of Divorce Code § 201(d)(1), despite living under the same roof. We also find that facts clearly demonstrate that the marriage is irretrievably broken. Therefor, we hold that the lower court correctly granted R. George Mackey's request for a unilateral divorce from Marion M. Mackey. Further, we find that the lower court did not abuse its discretion when it granted Mr. Mackey's motion for bifurcation. Hence, we hold that the lower court correctly denied the appellant's post-trial motion/exceptions. Order affirmed.