COWSERT v COWSERT

OPINION OF THE COURT

1. DIVORCE—NO-FAULT DIVORCE—CONSTITUTIONAL LAW—STATUTES.
   Michigan's "no-fault" divorce statute is constitutional (MCLA 552.6; MSA 25.86).

2. DIVORCE—NO-FAULT DIVORCE—SEXUAL INTERCOURSE—STATUTES.
   An isolated instance of sexual intercourse between the parties in a divorce action which occurs after the commencement of the divorce action but more than one year prior to trial, is not, in and of itself, a sufficient basis upon which to deny a divorce under the "no-fault" divorce statute (MCLA 552.6; MSA 25.86).

CONCURRENCE BY M. J. KELLY, P. J.

3. DIVORCE—IRREMEDIABLE BREAKDOWN—GUIDELINES.
   *The question in a "no-fault" divorce action of what constitutes an irremediable breakdown in a marriage has absolutely no guidelines and therefore is to be determined on a case-by-case basis.*

4. DIVORCE—NO-FAULT DIVORCE—REQUIREMENTS—EVIDENCE—STATUTES.
   *The "no-fault" divorce statute requires a presentation of evidence; such evidence must show a dead or dying marriage, and there must be little likelihood of healing grace (MCLA 552.6; MSA 25.86).*

5. DIVORCE—NO-FAULT DIVORCE—PROOFS—RECUPERATIVE POSSIBILITIES.
   *A trial court must hear the proofs of both parties in a "no-fault" divorce action and must exercise its judicial function in deter-*

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur New Topic Service, No-Fault Divorce §§ 3–7.
[2] Am Jur New Topic Service, No-Fault Divorce § 23.
[3] Am Jur New Topic Service, No-Fault Divorce § 21.
[4] Am Jur New Topic Service, No-Fault Divorce §§ 21–23.
[5] Am Jur New Topic Service, No-Fault Divorce § 19.

*mining if there are any recuperative possibilities for the marriage.*

Appeal from Oakland, Arthur E. Moore, J. Submitted May 9, 1977, at Lansing. (Docket No. 29847.) Decided September 7, 1977.

Complaint by Charles L. Cowsert against E. Lillian Cowsert for divorce. Divorce denied. Plaintiff appeals. Reversed and remanded.

*Ledwon & Gardner,* for plaintiff.

*Bristol E. Hunter,* for defendant.

Before: M. J. Kelly, P. J., and Allen and D. E. Holbrook, Jr., JJ.

D. E. Holbrook, Jr., J. The fundamental issue in this case has to do with the constitutionality of the Michigan "no-fault" divorce statute, MCLA 552.6; MSA 25.86.

The pertinent facts giving rise to the instant appeal involve a divorce action instituted by plaintiff on March 17, 1975. Plaintiff's complaint originally alleged that there had been a breakdown in the marriage relationship to the extent that the objects of matrimony had been destroyed and that there remained no reasonable likelihood that the marriage could be preserved. Such language followed the "no-fault" statute enacted in 1971. On September 11, 1975, plaintiff filed an amended complaint incorporating the "no-fault" grounds and added a separate allegation claiming extreme cruelty.

The trial was had on June 21, 1976, at which

time the trial judge ruled Michigan's "no-fault" divorce statute to be unconstitutional and required plaintiff to present his proofs under the old law with respect to extreme and repeated cruelty. During the trial, at which only the plaintiff testified, evidence was brought out that approximately 2-1/2 months following the filing of the original complaint plaintiff and defendant engaged in an act of sexual intercourse. This was more than a year prior to the trial in this case. The trial judge found that the isolated act of sexual intercourse constituted condonation and denied the divorce. Plaintiff appeals as of right.

The constitutionality of the Michigan "no-fault" divorce statute, MCLA 552.6; MSA 25.86, appears to be one of first impression in this state. Hence we find it necessary to look to certain California decisions relative to attacks on similar statutes. In California a statute providing for dissolution of a marriage upon a finding of irreconcilable differences which have caused the irremediable breakdown of the marriage was held valid over objections that it violated the constitutional guaranty of due process, that it was too vague and ambiguous to assure uniform application, that it impaired the obligations of contract, and that application of the statute in the instant case constituted a retroactive application of law depriving the wife of her vested interest in her married status, *In re Marriage of Walton*, 28 Cal App 3d 108; 104 Cal Rptr 472 (1972).

In another California decision a contention that the statute was unconstitutional, in that it laid down absolutely no guidelines as to what constitutes irreconcilable differences, with the result that the marriage might be dissolved "on the whim and caprice of the particular judge", was

rejected in *In re Marriage of Cosgrove,* 27 Cal App 3d 424; 103 Cal Rptr 733 (1972).[1]

The pertinent part of the Michigan statute, MCLA 552.6; MSA 25.86, reads as follows:

"(3) The court shall enter a judgment dissolving the bonds of matrimony if evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."

While the Michigan statute reads somewhat differently than the California statute the meaning and import are nearly identical. We choose to follow the view taken by the California court and hold our own Michigan "no-fault" divorce statute, MCLA 552.6; MSA 25.86, to be constitutional. Moreover, we would hold that a marriage is based on more than just sex so that an isolated instance of sexual intercourse occurring after the commencement of a divorce action but more than one year prior to trial is not, in and of itself, a sufficient basis to deny a divorce under the "no-fault" divorce statute.

Since the trial court held the "no-fault" divorce statute to be unconstitutional and applied an erroneous principle of law relative to the instant case by requiring plaintiff to proceed under previous, no longer existing, law we reverse and remand to the trial court for rehearing and redetermination pursuant to the provisions of MCLA 552.6; MSA 25.86.

Reversed and remanded for proceedings not inconsistent with this opinion. No costs, construction of a statute being involved.

---

[1] For a detailed explanation of the California court's reasons *see* 55 ALR 3d, 590–592.

ALLEN, J., concurred.

M. J. KELLY, P. J. *(concurring).* I concur in the
result reached by the majority. The trial judge
here held the no-fault divorce statute unconstitu-
tional on the ground that the statute violates the
rights of children of divorcing parties. He did so
presumably to force this appeal because there
were no minor children of this couple and the
defendant did not assert the unconstitutionality of
the statute. The trial judge raised the issue on his
own.

The ALR article cited in Judge HOLBROOK's
opinion was relied on by appellant who, in his
very able brief, points out that time and tide in
these United States have come to no-fault. He
says:

"As of 1974, 45 states permitted some form of 'no-
fault' grounds for divorce".

Furthermore, we have found no single instance
where a no-fault divorce statute has been declared
unconstitutional. The will of the people, though
lamentable, is clear. The trial judge's reasoning is
obsolete, unfortunately. I write only to address one
facet of his argument, and that is that if we have
160 circuit judges in the state we have just that
many potential interpretations. There are abso-
lutely no guidelines as to what constitutes an
irremediable breakdown.

It seems to me that this posits the precise ques-
tion which must be answered on remand by the
trial court sitting as a court of equity. On the
record presented here, unless we are to say that
the trial court functions perfunctorily, this divorce
could have been refused for the failure of the
appellant to persuade the court that there was a

substantial breakdown in the marital relationship. The statute quoted by the majority requires:

(1) A presentation of evidence,

(2) The evidence must show a dead or dying marriage, and,

(3) There must be little likelihood of healing grace.

Everyone knows that a neatly typed and bound record is a poor instrument for assessing credibility and sometimes even downright misleading. The defendant did not take the stand here, but of course she did not have to; the court held that the proofs presented by the plaintiff were insufficient to establish extreme and repeated cruelty. Viewed in the light most favorable to defendant, the parties had been married 35 years, the plaintiff testified that defendant had been a good wife, that after he became ill and couldn't work she called him names a couple of times and he overreacted. Viewing the proofs in the light most favorable to plaintiff, defendant introduced tension into their relationship after he had had two heart attacks and he was fearful of further reverses to his health. The single strongest indication of a breakdown, however, is that the plaintiff moved out of the house bag and baggage on March 10, 1975, and remained away from defendant permanently except for one brief episode.

The trial court on remand will have to hear the proofs of both parties and exercise its judicial function in determining if there are any recuperative possibilities. There is a contest. It is not automatic. The state still has an interest. If the Legislature had intended no-fault to be automatic it could have said so.