483 A.2d 945
**Robert W. THOMAS, Appellant,**

v.

**Ruth H. THOMAS.**

Superior Court of Pennsylvania.

Argued July 11, 1984.

Filed Oct. 29, 1984.

42

Lee A. Montgomery, Butler, for appellant.

George C. Atwell, Butler, for appellee.

Before ROWLEY, HESTER and ROBERTS, JJ.

ROWLEY, Judge:

This is a direct appeal from the final Order of the Court *en banc* dismissing appellant's exceptions to the trial court's order denying a divorce under Section 201(d) of the Divorce Code, 23 P.S. § 201(d). Section 201(d)(1) provides that a court may grant a unilateral divorce, if it determines, after notice and hearing, that the parties have lived separate and apart for at least three years and that the parties' marriage is irretrievably broken. In this case, the trial court determined that appellant, Robert W. Thomas, was not entitled to a divorce under Section 201(d) because the parties, although separated, had engaged in sexual relations during the three year separation period. Because we find that isolated acts of sexual intercourse during a three year separation period do not necessarily defeat a cause of action in divorce under Section 201(d), we reverse.

On June 2, 1980, Robert Thomas filed a complaint for divorce based upon indignities. On July 22, 1980, appellee, Ruth H. Thomas filed an application to proceed under the new Divorce Code, 23 P.S. §§ 101–801, and her application was granted by the trial court. On December 19, 1980, appellee filed a petition for counseling pursuant to Section

202 of the Divorce Code, 23 P.S. § 202(a),[1] requesting that the divorce proceedings be delayed 90 days and that the parties be ordered to participate in a maximum of three counseling sessions. The trial court ordered counseling and the parties complied with that order. (N.T., August 15, 1983, p. 19). On May 6, 1983, almost three years after the original complaint in divorce was filed, appellant filed an amended complaint and affidavit pursuant to Section 201(d) alleging that he was entitled to a divorce because the parties' marriage was irretrievably broken and because they had lived separate and apart for three years. On May 20, 1983, appellee filed her counter-affidavit denying that the parties have lived separate and apart for a period of three years. A hearing was then held before the trial court on August 15, 1983.

At the hearing, the testimony indicated that appellant moved out of the residence he shared with his wife on March 1, 1980. Appellant testified that he returned to the marital residence numerous times to visit his son. He stated that he had sexual intercourse with his wife approximately a dozen times during their separation. He testified, however, that his visits with his wife were prompted by the suggestions of the marriage counsellor and his wife's threats to curtail his visits with his son. Appellee, Ruth Thomas testified that the parties engaged in sexual intercourse approximately 33 times during the separation period and that it was her feeling that the parties' sexual activities were attempts at making the marriage work. She stated that her husband told her that he was "mixed up" and that he didn't know what to do about the situation. She also stated that she initiated a few of his visits with her. Both parties testified that the last sexual encounter occurred in December of 1982.

On August 22, 1983, the trial court filed a Memorandum Opinion and Order denying a divorce. Appellant's excep-

1. 23 P.S. § 202(a) provides:
   Whenever section 201(a)(6) [1] [indignities] is the ground for divorce, the court shall require up to a maximum of three counseling sessions where either of the parties requests it.

tions to the Order were dismissed by the court *en banc* and the order denying the divorce was approved on October 17, 1983. This appeal timely followed.

■ In reviewing a divorce case, this court is bound to engage in a *de novo* evaluation of the record to decide, independent from the master or the trial court, whether a legal cause of action in divorce exists. *Jones v. Jones*, 311 Pa.Super. 407, 457 A.2d 951 (1983). In this case, the trial court held that the record did not support the grant of a unilateral "no-fault" divorce under § 201(d) because the parties testified that they had engaged in sexual relations during the required separation period. Appellant asserts that the denial of a divorce on that ground was error. We agree.

Section 201(d)(1) of the Divorce Code provides:

It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:

(i) the respondent does not deny the allegations set forth in the affidavit; or

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken.

23 P.S. § 201(d)(1). "Irretrievable breakdown" is defined in the definitional section of the Divorce Code as "[e]strangement due to marital difficulties with no reasonable prospect of reconciliation." 23 P.S. § 104. "Separate and apart" is defined as the "[c]omplete cessation of any and all cohabitation." 23 P.S. § 104. There is no definition of cohabitation provided in the Divorce Code. Thus, this appeal raises a question not heretofore decided by this Court, that is, whether isolated acts of sexual intercourse constitute "cohabitation", thereby defeating a claim that the parties

have lived "separate and apart" for three years in accordance with Section 201(d).

In *Totino v. Totino*, 176 Pa.Super. 108, 106 A.2d 881 (1954), a case involving a divorce action on the ground of desertion, our Court defined cohabitation as "living or dwelling together." *Id.*, 176 Pa.Superior Ct. at 113, 106 A.2d at 883. Similarly, *Black's Law Dictionary* defines cohabitation in the following manner:

> To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.

*Black's Law Dictionary* 236 (rev. 5th ed. 1979), citing *Boyd v. Boyd*, 228 Cal.App.2d 374, 380, 39 Cal.Rptr. 400, 404 (1964). *See Amelio v. Amelio*, 18 D. & C.3d 673 (1981) (gravamen of requirement that parties live separate and apart for purposes of Section 201(d) is that parties lead "separate lives"). The legislators did not discuss the meaning of cohabitation in House and Senate debates regarding the definition of "separate and apart". However, House debates regarding the question whether cohabitation with a person of the opposite sex should serve as a bar to alimony (23 P.S. § 507) reveal that the legislators perceived "cohabitation" as involving more than just sexual relations. This point is illustrated by the following comments of Representative Cunningham, Centre County:

> Cohabitation is clearly not remaining at someone's house overnight. It is clearly not remaining at someone's house for the weekend. Cohabitation is a definition that has to be viewed in light of the facts of each individual case ... We are talking about a consistent pattern of conduct established over a substantial period of time with one person.

HJ 1843L, reprinted in J.A. Rounick, *Pa. Matrimonial Practice*, Part 3, Appendix B at 42–43 (1983).

Although our Court has not previously addressed this issue, it has been raised frequently before the Courts of

Common Pleas in this Commonwealth.[2] Specifically, we note the recent case of *Osborn v. Osborn*, 18 Centre Co.L.J. 83 (1983), wherein the trial court granted a divorce under Section 201(d), despite the fact that the parties had engaged in occasional sexual relations and that the wife desired a reconciliation. In that case, the court stated;

> We believe cohabitation means more than two spouses seeing each other on an occasional basis after separation and taking a week long trip [together], even if they sporadically engage in sexual relations. We believe the legislature intended cohabitation to mean a more substantial sort of relationship—a renewed marital relationship ... Such a relationship involves significantly more than coition.

*Id.* at 85. We find that "cohabitation" means the mutual assumption of those rights and duties attendant to the relationship of husband and wife. The ties that bind two individuals in a marital relationship involve more than sexual intercourse. Thus, we find that instances of sexual relations during a separation period do not, without more, defeat a claim that the parties have lived separate and apart for purposes of Section 201(d). That sex is but one part of the many aspects of a normal marital relationship is dramatically illustrated by the case of *Ellam v. Ellam*, 132 N.J.Super. 358, 333 A.2d 577 (1975). In that case, the parties did not engage in sexual intercourse after their separation and they maintained separate residences. Nonetheless, the testimony revealed that although the husband slept at his mother's home, he was continually present at the marital home, making sure his wife was well, taking care of the dog, watching television and engaging in conver-

2. *See, Hepp v. Hepp*, 70 Del.Co.Rep. 438 (1983); *Osborn v. Osborn*, 18 Centre Co.L.J. 83 (1983); *O'Brien v. O'Brien*, 7 Butler Co.L.J. 17 (1983); *Robinson v. Robinson*, Montgomery County Court of Common Pleas, Civil Division, No. 78–17749 (Sept. 27, 1982); and *Oatman v. Oatman*, Erie County Court of Common Pleas, No. 599A–1981 (April 12, 1982), holding that intermittent sexual relations during the separation period are not alone sufficient to deny a divorce under Section 201(d). *But see, Caparosa v. Caparosa*, Allegheny County Court of Common Pleas, Family Division, No. 1013 Jan. 1981 (Dec. 17, 1981), holding that husband's five week stay at the marital residence tolled the separation period for purposes of 23 P.S. § 401(e)(4) regarding exclusion of property acquired after separation from equitable distribution.

sations with his wife. He kept his car in the garage at the marital home and he spent weekends there doing household chores and occasionally eating his meals there. He testified that he loved his wife and his dog and he did not want the neighbors to know that he and his wife had separated. Basically, when the husband was not at work or attending classes, he spent all waking hours with his wife. Under New Jersey's "no-fault" divorce statute, a unilateral divorce may be granted if the parties have lived separate and apart in different habitations for an eighteen month period and there is no reasonable prospect of reconciliation. The court in *Ellam* refused to grant a no-fault divorce on the ground that the parties lived "separate and apart" because the associations of the husband and wife after their separation continued to include a substantial number of the many elements that make up the marital relationship, with the exception of sexual intercourse.

Our holding reflects the public policy of this Commonwealth as declared in the legislative findings and intent outlined in Section 102 of the Divorce Code. Section 102 states that the legislature intended to "[e]ncourage and effect reconciliation and settlement of differences between spouses ..." 23 P.S. § 102(a)(2). A contrary holding in this case would have a chilling effect on efforts at reconciliation. Estranged spouses would be reluctant to attempt a reconciliation if we were to hold that a failed attempt to re-establish the marital relationship causes the three year separation period to begin running anew for purposes of Section 201(d).[3] Our reasoning is in accordance with the law of our neighboring states.[4] For example, in *Brittner v.*

3. *See generally,* J.A. Rounick, Pa. *Matrimonial Practice,* Part I, § 4:4 at 60–62; Comment, *Divorce Reform: Pennsylvania Attempts to Break with the Past,* 18 Duq.L.Rev. 877, 897–898 (1980).

4. The Delaware Divorce Statute provides in pertinent part:

Bona fide efforts to achieve reconciliation prior to divorce, even those that include, temporarily, sleeping in the same bedroom and resumption of sexual relations, shall not interrupt any period of living separate and apart, provided that the parties have not occupied the same bedroom, or had sexual relations with each other within the 30 day period immediately preceding the day the Court hears the petition for divorce.

*Brittner,* 124 N.J.Super. 259, 306 A.2d 83 (1973), the New Jersey Superior Court held that a four week trial reconciliation period did not amount to a renewal of marital ties sufficient to deprive the husband of a cause of action under that state's unilateral divorce provision. The court stated:

> No real reconciliation was achieved, and plaintiff should not be penalized for an unsuccessful attempt at one. To hold otherwise would in general inhibit possible attempts at reconciliation by separated couples, a result to be avoided if possible. And if a divorce must be the ultimate result, what better evidence can be offered that there is no reasonable prospect of reconciliation than that the parties have recently tried and failed?

Id. at 263, 306 A.2d at 85.

In the instant case, the parties maintained separate residences because of marital discord. The husband stated that he visited the marital home either to see his son, to comply with court ordered counseling, or at his wife's insistence. He testified that he never remained at the marital home overnight after the parties engaged in sexual intercourse. In our view, the fact that the parties engaged in sexual relations does not, by itself, defeat a claim for a unilateral divorce predicated on separation under Section 201(d), especially where there is no other evidence indicating that the parties resumed other aspects of their relationship.

■  Moreover, we find that the testimony elicited from the parties in this case conclusively demonstrates that there was no reasonable prospect of reconciliation. Thus, the second requirement for a unilateral divorce under Section

Del.Code Ann. tit. 13 § 1505(e) (Supp.1978). *See also, Sindel v. Sindel,* 70 Ohio Op.3d 223, 226 (Ct.App.1975) (isolated acts of sexual intercourse do not constitute cohabitation thereby tolling two year separation period under Ohio Divorce Code where the parties do not otherwise function as husband and wife); *Cowsert v. Cowsert,* 78 Mich.App. 129, 259 N.W.2d 393 (1977) (isolated acts of sexual intercourse occurring after a divorce action is commenced and one year prior to trial are not sufficient basis to deny a divorce under Michigan no-fault statute); Gold-Bikin & Rounick, *The New Pennsylvania Divorce Code,* 25 Vill.L.Rev. 617 (1980).

201(d)—irretrievable breakdown of the marriage—was also satisfied.

We point out that this action was originally instituted by the husband prior to the enactment of the new Divorce Code on the ground of indignities. Thereafter, appellee-wife was granted leave to proceed under the new Code and the court ordered counseling per her motion in accordance with Section 202(a).[5] Although the parties complied with the counseling order, it did not result in a revival of their marriage. Thereafter, the husband amended his complaint to state divorce grounds under Section 201(d)(1). After notice and hearing, the trial court denied the divorce holding that the record did not support a finding that the parties lived separate and apart and that the marriage was irretrievably broken. The trial judge did not specifically find that there was a reasonable prospect of reconciliation. If he had made such a finding, he would have been bound to continue the matter and order counseling pursuant to Section 202(c).[6] However, he did not take this action. It appears that he denied the divorce upon a determination that occasional sexual intercourse between estranged spouses is inherently inconsistent with the divorce grounds specified in Section 201(d)(1). As discussed above, we do not

5. *See supra* note 1.
6. 23 P.S. § 201(d)(2) provides:
> If a hearing has been held pursuant to paragraph (1)(ii), and the court determines that there is a reasonable prospect of reconciliation, then the court shall continue the matter for a period not less than 90 days nor more then 120 days, unless the parties agree to a period in excess of 120 days. During such period, the court shall require counseling as provided in section 202.[1] If the parties have not reconciled at the expiration of the time period and one party states under oath that the marriage is irretrievably broken, the court shall determine whether the marriage is irretrievably broken. If the court determines that the marriage is irretrievably broken, the court shall grant the divorce. Otherwise, the court shall deny the divorce.

23 P.S. § 202(c) provides:
> Whenever the court orders a continuation period as provided in section 201(d)(2), the court shall require up to a maximum of three counseling sessions within the time period where either of the parties requests it or may require such counseling where the parties have at least one child under 16 years of age.

agree that sexual relations between the estranged spouses in this case tolled the separation period; similarly, we do not agree that the parties' conduct precluded a finding that the marriage was irretrievably broken.

There was no evidence of record that the parties herein were committed to re-establishing their marriage, other than the fact that they engaged in sexual relations. Appellant stated that he never intended to resume the marital relationship and that he felt that the parties' problems could not be solved. Indeed, the parties' unsuccessful efforts at reconciliation were further evidence that their marriage was unworkable. Appellee admitted that appellant never actually said that he was interested in reconciling or starting over. She could only say that she hoped that their physical intimacy would lead to reconciliation. Our review of the testimony convinces us that any hopes she still harbored concerning the viability of this marriage were unrealistic. The facts in this case clearly supported a finding that the parties' marriage was irretrievably broken.

Accordingly, we reverse the trial court's order denying the divorce and direct that a divorce be granted pursuant to Section 201(d).