## Britton v. Britton

*Samuel L. Andes,* for plaintiff.
*Gary M. Lightman,* for defendant.

BAYLEY, *J.,* September 6, 1989 — Plaintiff, Kenneth R. Britton, and defendant, Ruth F. Britton, were married on May 13, 1961. They separated in July 1985. Husband left the marital home in Dauphin County and took up residence in Wormleysburg. Wife remained in the marital home until it was sold in January 1986. She moved into an apartment for three months and then moved into another rental property.

Husband purchased a townhouse in Wormleysburg in November 1986. In April 1987, as wife's lease neared termination, she investigated the possibility of purchasing a condominium on the Portia Terrace in Wormleysburg. During that month the parties had discussions on the possibility of reconciling. On April 26, even though they were represented by separate attorneys, they drew up their own "Memorandum of Understanding," which stated:

"This is a memorandum of understanding between Kenneth R. and Ruth F. Britton relative to terms and conditions of a *proposed reconciliation* of their marriage, having lived separately since July 1985. The parties agree to the following:

*"(1) Should the reconciliation fail and in the event of another separation prior to November 1, 1987, parties agree to revert to the bargaining position enjoyed by each party prior to the date of reconciliation.*

"(2) Should the reconciliation fail and the parties again separate, it is agreed that the wife's portion of a marital property settlement be no less than a total of $100,000 if the final separation occurs before April 30, 1989.

"(3) Each party will notify their respective attorney via jointly signed notice to release escrow account to the joint parties and which will become a joint investment account of the couple.

"(4) Ruth will direct the Harrisburg Hardware payment be made payable to her at 17 Campbell Place, Camp Hill.

"(5) The distribution, allocation and management of the funds will be handled generally as per the attached flow sheet (as a guideline).

"(6) All previous agreements for temporary support, $1716.09 per month, are null and void as of this date." (emphasis supplied)

The flow sheet referred to in paragraph 5 is a listing and status of the parties' substantial assets and their liabilities.

In April 1987, the parties jointly purchased the townhouse on Portia Terrace as an investment. In early May 1987, wife moved into husband's residence in Wormleysburg, moving in all of her personal property and maintaining no separate residence. In late July 1987, wife moved out of husband's residence and took up residence in the townhouse on Portia Terrace. This ended their attempt at reconciliation. During the approximately three months that they were living in husband's Wormleysburg residence, they shared the same bedroom, resumed sexual relations and went out together. They also shared a joint checking account under the arrangements that were unchanged from the time prior to their separation in July 1985.

Husband commenced this divorce action on July

24, 1987. There has been no resolution of the economic issues raised therein. Since husband wants to petition for entry of a bifurcated divorce decree under section 201(d)(1) of the Divorce Code, the issue as to the commencement date for the time period required under that section was submitted to a master.[1] The marriage is irretrievably broken. In an able report, the master recommended that husband not be permitted to seek a divorce decree under section 201(d)(1) at this time because he has not lived separate and apart from wife for the required period of three years. Husband excepted to the master's report.

## DISCUSSION

Section 201(d)(1) of the Divorce Code now provides:

"It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least two years, and that the marriage is irretrievably broken, and:

"(i) the respondent does not deny the allegation set forth in the affidavit or

"(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least two years and that the marriage is irretrievably broken."[2]

---

1. 23 P.S. §201(d)(1)(Purdon Supp. 1989).

2. A three-year requirement was reduced to two years by a 1988 amendment to the code. Section 7 of Act 13, 1988 provides that the reduced time period in section 201(d)(1) applies to final separations which begin on or after the effective date of this act. For final separations beginning prior to the effective date of the amendment, the three-year time period applies. 1988 Pa. Legis. Serv. 13 (Purdon). Husband left wife in July 1985, but the end of their attempt at reconciliation occurred in late July 1987.

The term "separate and apart" is defined in section 104 as:

"Complete cessation of any and all cohabitation, whether living in the same residence or not." (emphasis supplied)

The Divorce Code does not define the word "cohabitation." In *Thomas v. Thomas,* 335 Pa. Super. 41, 483 A.2d 945 (1984), the Superior Court held that the word "cohabitation," as used in section 201(d)(1), means:

"The mutual assumption of those rights and duties attendant to the relationship of husband and wife."

Wife maintains that husband is currently barred from seeking the entry of a section 201(d)(1) divorce because their living arrangement from May 1987 through the end of July 1987 terminated the running of the three-year time requirement that had started in July 1985. Husband, on the other hand, maintains that for the three months in 1987 that he lived in the same residence with his wife under their reconcilation agreement, he did not cohabit with her as the term is used in the definition of "separate and apart" in section 104. He argues that this interpretation is consistent with section 102(a)(2) which sets forth that the policy of the commonwealth is to "[e]ncourage and effect reconciliation and settlement of differences between spouses. . . . " The trial courts of the commonwealth have struggled with interpreting the legislature's intent on the issue of what constitutes living separate and apart under section 201(d)(1). See, *Hepp v. Hepp,* 30 D.&C.3d 80 (1983); *Osborne v. Osborne,* 25 D.& C. 3d 709 (1983); *Oatman v. Oatman,* 25 D.&C. 3d 616 (1982). Compare, *Jenkins v. Jenkins,* 26 D.&C. 3d 644 (1983); *Meyerl v. Meyerl,* 129 Pitts.Leg.J. 397 (1981); *Caparosa v. Caparosa,* slip opinion at 1013 January 1981 (Allegheny County).

In the present case, the parties do not dispute that they commenced living separate and apart for the purposes of section 201(d)(1) when husband left the marital residence in Dauphin County in July 1985.[3] The issue therefore, is whether the arrangement under which they lived together for three months in 1987 terminated the running of the three-year period required for a section 201(d)(1) divorce. More precisely, on the facts of this case, which are different than in any reported case in the commonwealth, the issue is: When spouses who are living separate and apart resume living together for a fixed period of attempted reconciliation *with the joint specific intent not to assume those rights and duties attendant to a marital relationship,* does that arrangement terminate the running of the time period in section 201(d)(1) where the reconciliation fails within the fixed period?

Here, both parties agreed to attempt a reconciliation from July 1987 to November 1, 1987. Their specific intent if they failed to reconcile by November 1, as set forth in their written memorandum, was that both "revert to the bargaining position enjoyed by each party prior to" the attempt. Two lawyers could not have more clearly drafted a statement of their intent. The master concluded that the parties stepped over the line into the realm of cohabitation and therefore were not living separate and apart during their attempted reconciliation. We

3. In *Sinha v. Sinha,* 515 Pa. 14, 526 A.2d 765 (1987), husband left his wife in India to pursue his master's degree in the United States. The Supreme Court held that he did not live "separate and apart" from his wife for the purposes of section 201(d)(1) until he communicated to her his intent to dissolve the marital relationship by filing for a divorce. These facts are totally different from the circumstances in the present case where husband left the marital home in 1985 and clearly started to live separate and apart from wife.

conclude that the master placed too much emphasis on what the words "separate and apart" would mean to a layman, and how the parties would have appeared to others during the three months they lived together. The legislature has restricted the normal usage of the words "separate and apart" in the legal definition of section 104 in that husband and wife may live together in the same residence and not cohabit. We are bound by the definition of "cohabitation" used by the Superior Court in *Thomas v. Thomas, supra.*

Clearly the parties here did not assume the rights and duties attendant to the relationship of marriage when they were together attempting a reconciliation for three months in 1987. While they might have appeared to be cohabitating to other people, that was an illusion. The reality was, that while they were living in the same residence, they had mutually agreed that if they did not reconcile by November 1, 1987, they would revert to the bargaining position enjoyed by them prior to their attempt at reconciliation. They therefore were not living under "the mutual assumption of those rights and duties attendant to the relationship of husband and wife." *Thomas v. Thomas, supra.* The rights and duties attendant to a husband and wife do not revert to their bargaining positions in a divorce action should they separate at some future time.

We conclude that these parties who were living separate and apart from July 1985 and who intended to attempt to reconcile for a fixed period in 1987, did not break the running of the section 201(d)(1) time requirement when their attempted reconciliation failed within the fixed period. To hold otherwise would thwart the policy of the commonwealth to "encourage and effect reconciliation and settlement of differences between spouses." The parties here

wanted to attempt a reconciliation, but if it failed, they intended to revert to the bargaining position enjoyed by each other prior to the attempt. If such an arrangement terminates the running of the time period in section 201(d)(1), wife's bargaining position, contrary to the *joint intent* set forth in their memorandum of understanding, would be improved.[4] As anyone familiar with divorce litigation can attest, one party's ability to extend such a time period can be used in many ways to that party's advantage. That is especially true where one party is entitled to spousal support and/or alimony pendente lite. As set forth in *Thomas v. Thomas, supra,* where the Superior Court held that a husband and wife engaging in sexual relations in the marital home while they maintained separate residences did not terminate the running of section 201(d)(1) time period:

"Our holding reflects the public policy of this commonwealth as declared in the legislative findings and intent outlined in section 102 of the Divorce Code. Section 102 states that the legislature intended to 'encourage and effect reconciliation and settlement of differences between spouses . . . ' 23 P.S. §102(a)(2). A contrary holding in this case would have a chilling effect on efforts at reconciliation. Estranged spouses would be reluctant to attempt a reconciliation if we were to hold that a failed attempt to re-establish the marital relationship causes the three-year separation period to begin running anew for purposes of section 201(d)." (footnote omitted)

If efforts of parties who are separated to reconcile are to be successful, a period of living together again

---

4. The parties' joint intent is the key to this case. In essence, both parties waived any benefit either could gain under section 201(d)(1) as a result of their attempting to reconcile their marriage.

may be a necessary step for an attempt to have a reasonable chance of success. Where as here, there is clear and convincing evidence that the parties jointly intended not to assume those rights and duties attendant to the relationship of husband and wife, they have not cohabited as that term has been defined by the Superior Court and is used in the definition of "separate and apart" in the Divorce Code. As in *Thomas,* a contrary holding would have a chilling effect on efforts at reconciliation. Therefore, husband is free to petition for the entry of a bifurcated decree in divorce under section 201(d)(1).[5]

## ORDER OF COURT

And now, September 6, 1989, for the reasons stated in the opinion in support of this order, husband's exception to the master's report is sustained.

---

5. See *Mosier v. Mosier,* 359 Pa. Super. 187, 518 A.2d 843 (1986); and *Pastuszek v. Pastuszek,* 346 Pa. Super. 416, 499 A.2d 1069 (1985).