**Dorothy WELLNER, Appellee**

v.

**Albert James WELLNER,
Appellant (at 653).**

**Dorothy WELLNER, Appellant**

v.

**Albert J. WELLNER, Appellee (at 696).**

Superior Court of Pennsylvania.

Argued April 16, 1997.
Filed Aug. 8, 1997.

Claudia DeArment, York, for Albert J. Wellner.

Edward B. Golla, Stewartstown, for Dorothy Wellner.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This appeal and cross-appeal are from the final order of equitable distribution of the Court of Common Pleas of York County. Herein, Albert Wellner asserts that the lower court erred in determining that the parties separated in August of 1992, rather than August of 1979, for the purposes of equitable distribution. In her cross-appeal, Dorothy Wellner asserts that the lower court erred in failing to divide certain rents, interest and profits earned by marital assets between the date of the divorce decree on July 12, 1993, and the date of distribution of those assets. Upon review, we affirm the final order of equitable distribution.

On December 14, 1992, Wife filed a complaint requesting a divorce, equitable distribution of property, alimony and counsel's fees, costs and expenses. The action was bifurcated, and the parties were divorced on July 12, 1993. Subsequently, in November of 1993, Wife filed a petition for special relief which requested the court to award her alimony *pendente lite*. A master's hearing was held on April 12, 1994. The master issued his report and recommendation on September 28, 1994, and both Husband and Wife filed exceptions to the master's decision. Oral argument on the exceptions was held on May 4, 1995.

On November 10, 1994, in response to Wife's petition for special relief filed almost a year earlier, the court entered an order directing Husband to pay Wife $ 19,372.80, which represented Husband's alimony obligation of approximately $1400.00 per month from July 12, 1993, the date of divorce, through the date of Husband's retirement on September 1, 1994. This order implemented, in part, the alimony portion of the master's recommendation since Husband did not challenge the master's alimony determination in his exceptions. This order did not compel Husband to continue to pay monthly alimony *pendente lite*.

On December 13, 1994, Wife filed another petition for special relief which requested division of rents, profits and earnings from marital property, all of which, Wife argued, were in Husband's possession. On December 14, 1995, in response to this motion, the court entered an order directing Husband to pay $650.00 per month in alimony beginning with September of 1994. These alimony *pendente lite* payments were to be credited towards Husband's final alimony obligation, and, to the extent they exceeded his final alimony obligation, they were to be credited towards Wife's share of the equitable distribution. The order also reserved the issue of rents, interest and profit for determination at the time of final distribution of the marital property.[1]

On July 10, 1995, the court filed an a opinion which affirmed the master's determi-

---

1. On December 14, 1995, the court, upon consideration of the master's report and recommendation, ordered Husband to pay $684.96 per month in alimony for life, retroactive to September of 1994. This effectively reduced Husband's alimony obligation which was originally recommended by the master because of Husband's retirement.

nation that the date of separation for the purposes of equitable distribution of property was August of 1992, and remanded the case to the master for completion of the record with regard to the value of the MTA Credit Union savings account and the marital portion of the value of Husband's Baltimore City pension. On September 13, 1995, the master held another hearing and, thereafter, on October 19, 1995, filed a supplemental report which determined the value of the MTA Credit Union account and Baltimore city pension and the marital portion of those assets as of the date of separation. The master also recommended the marital estate be distributed to the parties equally, as had previously been decided in his first recommendation.

Exceptions to this report were filed by both Husband and Wife. In an opinion filed August 5, 1996, the lower court rejected for the second time Husband's assertion that the date of separation was actually August of 1979, not August of 1992. The court then affirmed the master's equal division of marital property with each party receiving $361,-501.33 in marital property. These appeals followed.

■ Absent an abuse of discretion, the lower court's findings of fact, if supported by credible evidence of record, are binding upon a reviewing court. *Gordon v. Gordon*, 436 Pa.Super. 126, 134–136, 647 A.2d 530, 534 (1994), *reversed on other grounds*, 545 Pa. 391, 681 A.2d 732 (1996); *Campbell v. Campbell*, 357 Pa.Super. 483, 490, 516 A.2d 363, 366 (1986). Presently, the lower court adopted the factual findings and legal conclusion of the master with regard to date of separation. In the report and recommendation of September 28, 1994, the master set forth the facts which are pertinent to the separation issue, as follows:

12. In August, 1979, Husband and Wife were residing together at Regwood Road in Fork, Maryland.

13. In August, 1979, Wife's father was ill and Wife was visiting her mother's home on a daily basis to help with the care of her father. Wife had no car so she was being transported twice a day by her Husband.

14. In August, 1979, the Husband failed to appear to pick up the Wife at her mother's residence but the Husband did arrive a few days later with the Wife's clothes which he left at his mother-in-law's house. There was no conversation or any other evidence as to Husband's intentions.

15. Wife continued to live at her mother's house for a period of years and eventually moved, with her mother, to Stewartstown, Pennsylvania where mother and daughter resided in a house belonging to Wife's daughter.

16. For a period of time after August, 1979, there was no contact between Husband and Wife but thereafter contact was resumed and over the ensuing years the contacts between Husband and Wife were as follows:

(a) They looked at cars together.

(b) They went for rides and went out for meals.

(c) Husband visited Wife at their daughter's house and stayed overnight every Wednesday.

(d) Husband came every Friday night to Wife's daughter's house and left Monday morning. During these visits, the Wife cooked for the Husband and did his laundry.

(e) Sexual relations between Husband and Wife occurred on an average of once a month.

(f) Husband repeatedly requested the Wife to return to the Fork, Maryland address. The Wife refused due to the fact that the house was not habitable as the water was polluted, only one faucet worked and the septic tank was defective.

(g) During 1982 and 1983 Husband and Wife took trips to the ocean, visited gardens and some of these trips were overnight.

(h) When Husband and Wife spent the night in a motel, they registered as husband and wife.

* * *

18. In August, 1992, Husband arrived for his regular visit and Wife had his clothes packed and told him not to return. After this date there was only minimal contact between Husband and Wife.

Report and Recommendation of Master, 9/28/94, pp. 5–7

The Divorce Code provides that the court shall equitably divide marital property upon the request of either party in an action for divorce. 23 Pa.C.S.A. § 3502. Pursuant to 23 Pa.C.S.A. § 3501(a), "marital property" is generally defined as all property acquired by either party during the marriage, including the increase in value, *prior to the date of final separation,* of any nonmarital property. In prior cases, when considering a challenge to the trial court's determination of the date of separation, we have applied the following standard:

> ... The Divorce Code defines "separate and apart" as follows: "Complete cessation of any and all cohabitation, whether living in the same residence or not." 23 Pa. C.S.A. § 3103. In *Thomas v. Thomas,* 335 Pa.Super. 41, 483 A.2d 945 (1984), this court held that "cohabitation" means "the mutual assumption of those rights and duties attendant to the relationship of husband and wife." *Id.* at 47, 483 A.2d at 948.
>
> Thus, the gravamen of the phase "separate and apart" becomes the existence of separate lives not separate roofs (citations omitted). This position follows the trend of Pennsylvania case law in which a common residence is not a bar to showing that the parties live separate and apart ...

*Flynn v. Flynn,* 341 Pa.Super. 76, 81, 491 A.2d 156, 159 (1985). *Compare Mackey v. Mackey,* 376 Pa.Super. 146, 545 A.2d 362 (1988) (where parties had private living quarters, no public social life together, and had ceased sexual relations, the parties lived "separate and apart" despite the fact that they resided in the same house) *with Britton v. Britton,* 400 Pa.Super. 43, 582 A.2d 1335 (1990) (where parties jointly purchased a townhouse, shared a joint checking account, had a social life as husband and wife, shared the same bedroom and resumed sexual relations, the court found the parties were not living "separate and apart.").

*Schmidt v. Krug,* 425 Pa.Super. 136, 139, 624 A.2d 183, 185 (1993); *Gordon,* 647 A.2d at 534, *reversed on other grounds.*

▮ Applying the foregoing, we find that the trial court did not err when it determined the date of separation to be August of 1992. Neither Husband nor Wife affirmatively indicated their intention to live "separate and apart" until August of 1992, when Wife packed Husband's clothes and told Husband to leave her and their daughter's house and not return. Since the time Wife began living with her daughter, Husband and Wife spent Wednesday nights together and weekend together at Wife's residence, and, at least once a month through June of 1992, they enjoyed the physical intimacy of marriage. While at Wife's residence, the couple acted as if they were married with Wife cooking meals for Husband and washing his clothes. The parties vacationed together and held themselves out to be husband and wife. Accordingly, the record supports the court's conclusion that the parties did not separate until August of 1992, and we will not disturb the lower court's decision.

Husband nevertheless argues that the correct date of separation is August of 1979, when Wife left the marital residence to care for her ailing father and did not return. As evidence of the August of 1979 date of separation, Husband cites to various pleadings of Wife, most notably her complaint in divorce, which averred the date of separation was August of 1979. He also cites to two orders of court, one which granted spousal support to Wife and one which bifurcated the divorce action, which indicate that the date of separation was August of 1979.[2] Further, Husband notes that during support and bifurcation proceedings the Wife testified under oath that the parties separated in August of 1979.[3]

---

2. We note that the support order specifically provided: "We, of course, do not intend to imply that [the separation date of August 1979] carries over to the divorce side, as there has been testimony that the parties engaged in sexual relations up to and through June of 1992. However, for the purposes of the support proceeding, we determine that the parties did separate in at least August of 1979". Support Order of March 16, 1993, p. 3.

3. We note that, inexplicably, neither the original complaint in divorce, support order, bifurcation order nor testimony related thereto appear in the record. However, those documents do appear in the record as exhibits which were offered into evidence during the master's hearing.

The problem with Husband's argument is two-fold: First, he cites Wife's prior testimony and factual averments out-of-context. It is true that Wife has previously asserted that the parties *first* separated in 1979. However, Wife then further explained that the parties resumed their marital relations after she moved to their daughter's home and did not finally separate until August of 1992. Accordingly, we find no error in the court's determination that neither party revealed an "intent to dissolve the marital union apart from mere physical separation" until August of 1992. *See, Sinha v. Sinha*, 515 Pa. 14, 20, 526 A.2d 765, 768 (1987).[4]

Second, the determination made in the support order and the bifurcation order that the parties were separated in 1979 does not have the same legal significance as the determination of the "final date of separation" which was rendered during equitable distribution. For the support decision, Wife only needed to establish, *inter alia*, that she was financially dependent and the parties were separated with adequate legal cause at the time of her request for support. 23 Pa.C.S.A. § 4321; *Com. ex rel. Simpson v. Simpson*, 287 Pa.Super. 356, 430 A.2d 323 (1981). Thus, the determination of the actual date of separation was not prerequisite for

spousal support. Likewise, in this case, Wife was entitled to a divorce upon showing, *inter alia*, "that the parties have lived separate and apart for a period of at least two years." 23 Pa.C.S.A. § 3301(d). Again, the issue which the court was required to decide in the divorce (bifurcation) decision was whether the parties had lived separate and apart for at least two years, and, thus, the precise date of separation again was not at issue. Consequently, "the date of final separation" was not *res judicata* for the purposes of equitable distribution since the actual date of separation was not necessary to either the support order or divorce decree but was absolutely necessary for the order of equitable distribution. *See*, 23 Pa.C.S.A. § 3501; *Hebden v. W.C.A.B. (Bethenergy Mines)*, 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993) (*res judicata* or collateral estoppel "forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated *and which was necessary to the original judgment*").[5] Accordingly, Wife was not estopped from litigating the date of final separation in the equitable distribution phase of this action, and the lower court did not abuse its discretion in finding the date of separation to be August of 1992.[6]

---

4. We note that the lower court did consider Wife's statements and factual averments regarding the parties' first separation in reaching its conclusion that final separation did not occur until August of 1992.

5. We note Husband does not expressly assert that issue of the date of separation is *res judicata*, although his argument strongly implies such a claim.

6. We acknowledge that this case is unique since in the usual case, the date of separation is a reasonably certain date and the same date for divorce and equitable distribution purposes. Of course, we are concerned that there is a glaring problem with the dual dates applied in this case which neither party has raised. For the parties' divorce decree to have been entered on June 12, 1993, the parties needed to be separated for at least two years on that date, 23 Pa.C.S.A. § 3301(d). Since, in the context of equitable distribution, the court actually determined that the parties did not separate, i.e., live separate and apart, until August of 1992, the parties arguably did not qualify for a § 3301(d) divorce at the time the decree was entered. In fact, in a similar situation, we found that the lower court

erred in entering the divorce decree and reversed the decree granting the divorce. *See, Britton, supra* (where parties were not separated for sufficient period of time, it was reversible error for the court to grant a divorce). Unfortunately, neither party has raised the propriety of the divorce decree as an issue, and we will not *sua sponte* address this problem. *Blatz v. Blatz*, 412 Pa.Super. 449, 603 A.2d 666 (1992) (issues not presented to the court below are waived for the purposes of appellate review); *Schuback v. Schuback*, 412 Pa.Super. 233, 603 A.2d 194 (1992); *McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220 (1989). However, we do note that our decision today should not be interpreted as holding that there can be more than one "final date of separation" in a divorce action for clearly the date of separation for divorce and equitable distribution purposes should be the same. Unfortunately, given the procedural posture of this case, we cannot review the propriety of the court's determination of the date of separation in the divorce action, but rather, may only consider whether the decision of the court in the equitable distribution action was proper. The problem of the two different dates has simply presented itself in a manner which evades our consideration of it.

We now turn to Wife's claim that the lower court erred when it did not award her rents, interest and profits which were earned by her share of the marital assets from the date of separation until the date of distribution. When reviewing an order of equitable distribution, our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence. *Fonzi v. Fonzi,* 430 Pa.Super. 95, 633 A.2d 634 (1993); *Perlberger v. Perlberger,* 426 Pa.Super. 245, 626 A.2d 1186 (1993); *Naddeo v. Naddeo,* 426 Pa.Super. 131, 626 A.2d 608 (1993). Presently, Wife specifically complains that Husband controlled all of the marital assets, and she has reaped none of the increase in the value of those assets. Especially, she is concerned about the marital funds which were invested in the stock market from the date of separation until the time of distribution. She asks this court to remand this matter for the calculation of "the amount of income and profit due to [Wife] ... for all marital assets between the date of divorce and to [the] date of final determination by this Superior Court...." Wife's Brief, p. 18.

Clearly, the proper time for valuing a marital property is proximate to the date of distribution, not separation, as used in this case. *Sutliff v. Sutliff,* 518 Pa. 378, 381–382, 543 A.2d 534, 536 (1988); *Malseed v. Malseed,* 388 Pa.Super. 214, 565 A.2d 453 (1989); *Powell v. Powell,* 395 Pa.Super. 345, 577 A.2d 576 (1990). Unfortunately, Wife has never previously objected to valuation of the marital assets as of the date of separation and has not offered evidence to suggest the value of those assets as of the date of distribution. Consequently, we reject Wife's prayer for a remand for re-valuation of the marital assets as this is a matter which she should have first presented to the lower court but neglected to do. *Cf., Solomon v. Solomon,* 531 Pa. 113, 611 A.2d 686 (1992) (Superior Court did not abuse its discretion in refusing to remand case to trial court for revising valuation of marital assets relative to the date of distribution, even though assets were valued as of the date of separation, where Wife did not proffer up-dated values of the assets).[7]

Order of equitable distribution is affirmed.

---

7. We reject Wife's citation to *DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975) and *Vento v. Vento,* 256 Pa.Super. 91, 389 A.2d 615 (1978), as those cases are inapposite to the situation of equitable distribution. Those cases involved equity actions for partition of marital property which pre-date the current Divorce Code. As we have previously held, property does not lose its marital character merely because entry of a divorce decree in a bifurcated action has changed its ownership from a tenancy by the entireties to a tenancy in common. *Jawork v. Jawork,* 378 Pa.Super. 89, 548 A.2d 290 (1988). Thus, the lower court properly distributed the property according to the provisions of the Divorce Code, 23 Pa.C.S.A. §§ 3501–3508.